PD-1081-15

PD-1081-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/19/2015 11:34:26 AM
Accepted 8/20/2015 12:57:39 PM
ABEL ACOSTA
CLERK

*Oral argument requested*

**PD-_____-15**

IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# TODD ALLEN REICH
*APPELLANT*

vs.

# THE STATE OF TEXAS
*APPELLEE*

---

FROM THE FIFTH COURT OF APPEALS
CAUSE NO. 05-14-00562-CR

APPEAL FROM THE 296TH DISTRICT COURT OF
COLLIN COUNTY, TEXAS, CAUSE NO. 199-80306-2013

---

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

GARY UDASHEN
State Bar No. 20369590
gau@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

August 20, 2015

ABEL ACOSTA, CLERK

## Grounds for Review

I. Did the trial court err in overruling Reich's objection to not being notified that the State sought to prove the child-sexual-abuse complainant was younger than 14 years of age?

    a. In order to provide "actual notice" that the State will seek to enhance punishment, must the State provide *something*, or will a defendant's exhibition of an independent awareness of as much suffice?

    b. Is the State required to provide notice to a defendant that it will assert at trial, as a bar to probation eligibility, that a child-sexual-abuse complainant was younger than 14 years old?

II. Did the court of appeals misapply this Court's case law on sufficiency of the evidence in finding the evidence sufficient to uphold Reich's conviction for indecency with a child for touching the complainant's breast?

# Table of Contents

Grounds for Review.........................................................................................1

Index of Authorities ......................................................................................4

Identity of Parties and Counsel ...................................................................6

Statement Regarding Oral Argument ..........................................................7

Statement of the Case and Procedural History..........................................8

Ground for Review One ...............................................................................12

    The trial court erred in overruling Reich's objection to not being
notified that the State sought to prove the child-sexual-abuse
complainant was younger than 14 years of age..................................12

    I.   The court of appeals's holding ..................................................12

    II.  If "actual notice" had been provided, it would have satisfied the
State's obligation to provide written notice....................................14

    III. In order to provide "actual notice" the State has to provide
*something*, though, and in Reich's case it did not...........................15

    IV. The State is required to notify a defendant in writing if the
child-sexual-abuse victim is under the age of 14 ............................18

    V.   Conclusion.................................................................................27

Ground for Review Two ...............................................................................28

    The court of appeals misapplied this Court's caselaw on sufficiency of
the evidence in finding the evidence sufficient to uphold Reich's
conviction for indecency with a child for touching the complainant's
breast.....................................................................................................28

   I.   The court of appeals's holding ......................................................28

   II.  There is no evidence Reich intentionally touched the complainant's breast with the intent to arouse or gratify sexual desire ........................................................................................29

   III. Conclusion...........................................................................31

Prayer for Relief...................................................................................32

Certificate of Service.............................................................................33

Certificate of Compliance ......................................................................33

Appendix................................................................................................34

# Index of Authorities

**Cases**

*Baker v. State*, 519 S.W.2d 437 (Tex. Crim. App. 1975) ........................19

*Brooks v. State*, 847 S.W.2d 247, 249 (Tex. Crim. App. 1993) ................15

*Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995) ........14, 16

*Dodgen v. State*, 924 S.W.2d 216, 219 (Tex.App.—Eastland 1996, pet. ref'd) ................................................................................14, 17

*Ex parte Beck*, 769 S.W.2d 525 (Tex. Crim. App. 1989) ........................12

*Ex parte Kovacs*, 416 S.W.2d 420, 421-22 (Tex. Crim. App. 1967) .........24

*Ex parte Lawson*, 966 S.W.2d 532, 535 (Tex. App.—San Antonio 1996)24

*Ex parte Minott*, 972 S.W.2d 760, 761 (Tex. Crim. App. 1998)..............14

*Ex parte Minott*, 972 S.W.2d 760, 762 (Tex. Crim. App. 1998).........15, 27

*Ex parte Patterson*, 740 S.W.2d 766, 773–75 (Tex. Crim. App. 1987) ...12, 26

*Ferguson v. State*, 2 S.W.3d 718, 723 (Tex. App.—Austin 1999, no pet.) ................................................................................24

*Fernandez v. State*, No. 04-96-00374-CR, 1997 WL 164204, *2 (Tex. App.—San Antonio 1997, no pet.)........................................16

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973); ...........................................26

*Greer v. State*, 437 S.W.2d 558 (Tex. Crim. App. 1969) ........................31

*Hall v. State*, 86 S.W.3d 235 (Tex. App.—Austin 2002, pet. ref'd) .........31

*Hammer v. State*, 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009) .......23

*Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001) ..........14, 15

*Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ....................31

*Ivey v. State*, 07-08-0079-CR, 2008 WL 4916098 (Tex. App.—Amarillo 2008, no pet.) ................................................................................31

*Leday v. State*, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998) ................19

*Long v. State*, 13 Tex. 6, 10 (1871) .......................................................12

*Marquez v. State*, 921 S.W.2d 217, 222 (Tex. Crim. App. 1996).......22, 23

*McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ..........15

*Mitchell v. State*, 137 S.W.3d 842, 847 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ................................................................................15

*Moore v. State*, 154 Tex. Cr. R. 307, 227 S.W.2d 219 (1950)..................13

*Morrison v. California*, 291 U.S. 82, 88-89 (1934).................................23

*Nash v. State*, No. 01-97-01183-CR, 1999 WL 649164, *2 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)..................................16

*Reich v. State*, No. 05-14-00562-CR, 2015 WL 4505937 (Tex. App.—
   Dallas 2015) ...............................................................11, 13, 17, 29
*Rogers v. State*, 640 S.W.2d 248, 251 (Tex. Crim. App. 1981) ................26
*Roman v. State*, 986 S.W.2d 64, 66 (Tex. App.—Austin 1999, pet. ref'd)
   ...............................................................................................14, 17
*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)........................22
*State v. Mechler*, 153 S.W.3d 435, 447 (Tex. Crim. App. 2005) ..............24
*Walker v. State*, 108 Tex. Crim. 190, 193, 299 S.W. 417, 418 (1927) .....19
*Watson v. State*, 717 S.W.2d 765 (Tex. App.—San Antonio 1986, no pet.)
   ...................................................................................................25
*Weatherby v. State*, 61 S.W.3d 733, 741 (Tex. App.—Fort Worth 2001) 24
*Wester v. State*, 542 S.W.2d 403 (Tex. Crim. App. 1976) ........................26
*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013). .....................31
*Winfrey v. State*, 393 S.W.3d 763, 769 (Tex. Crim. App. 2013) ..............29
*Woodard v. State*, 931 S.W.2d 747, 749 (Tex. App.-Waco 1996, no pet.)17

**Statutes**
Tᴇx. Cʀɪᴍ. Pʀᴏᴄ. Cᴏᴅᴇ § art. 46C.051 ...................................................16
Tᴇx. Cʀɪᴍ. Pʀᴏᴄ. Cᴏᴅᴇ art. 42.12....................................................20, 21
Tᴇx. Pᴇɴ. Cᴏᴅᴇ §21.11 .............................................................................9

**Other Authorities**
ALI, Model Penal Code, § 1.12(3)(c)......................................................23

**Rules**
Tᴇx. R. Aᴘᴘ. P. 21.8 .................................................................................11
Tᴇx. R. Aᴘᴘ. P. 66.3(c)......................................................................13, 29

**Treatises**
1 Wharton's Criminal Evidence § 2:9 (15th ed.)....................................23
2 J. Strong, McCormick on Evidence § 337, p. 412 (5th Ed. 1999).........22
43A George E. Dix & John M. Schmolesky, *Texas Practice: Criminal
   Practice and Procedure* § 47:16 (3d ed. 2011) .....................................25
C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003).........22

## Identity of Parties and Counsel

For Appellant Todd Allen Reich:

    KIRK F. LECHTENBERGER
    CHRISTOPHER K. WOODWARD
        *Trial counsel of record*
    2525 McKinnon Street, Suite 420
    Dallas, Texas 75201

    GARY A. UDASHEN
    BRETT ORDIWAY
        *Appellate counsel of record*
    SORRELS, UDASHEN & ANTON
    2311 Cedar Springs Suite 250
    Dallas, Texas 75201

For Appellee the State of Texas:

    CRYSTAL LEVONIUS
    WES WYNNE
        *Trial counsel of record*
    COLLIN COUNTY DISTRICT ATTORNEY'S OFFICE
    2100 Bloomdale Road, Suite 2004
    McKinney, Texas 75071

    ANDREA L. WESTERFELD
        *Appellate counsel of record*
    COLLIN COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

    296TH DISTRICT COURT OF COLLIN COUNTY
    THE HONORABLE JOHN R. ROACH, JR., PRESIDING

## Statement Regarding Oral Argument

This case presents a question of first impression on an important issue of state law. Reich believes that oral argument will be valuable to this Court's understanding of the issue.

## Statement of the Case and Procedural History

After a classroom instruction as to how to respond to inappropriate touching, the sixth-grade complainant alleged that Reich—her physical education teacher at the school she attended from grades kindergarten through third—had done just that. (RR6: 38-43, 84-86). Specifically, the complainant alleged that on multiple occasions Reich: (1) rubbed her back and then moved his hands down and rubbed her buttocks; (2) concluded a hug by pushing her off by her chest; (3) put her hand on his privates. The complainant said that all of the alleged contact occurred over clothing. (SX4).

Upon Reich's arrest, he waived his constitutional rights and spoke with Collin County Sheriff's officers Billy Lanier and Gerald Burke. (SX8). In the video recording of that interview, in which Reich continually sobs and professes his innocence, he admits to sharing a close relationship with the complainant. (SX8). Reich explained that, at the time, he had few friends and no girlfriend and, admittedly inappropriately, sought out friendships with his students. (SX8). He speculated that, yes, he likely had some physical contact with the complainant. (SX8). But Reich was steadfast in his insistence that it was innocent—his arm

may have brushed against her chest, and she may have grabbed his crotch area on one occasion—Reich never gained any sexual gratification. (SX8).

Nonetheless, a grand jury indicted Reich on February 12, 2013, for four counts of indecency with a child by contact. (CR: 16-17); *see* TEX. PEN. CODE §21.11(a)(1). Specifically, the indictment alleged that Reich touched the complainant's breast with his hand (counts one and three) and caused the complainant's hand to touch his genitals (counts two and four). (CR: 16-17). Counts three and four further alleged that, at the time, Reich "was an employee of a public secondary school" at which the complainant was enrolled. (CR: 16).

Reich pleaded not guilty to each count, and on April 7, 2014, his trial began with voir dire. (RR6: 26). The State presented evidence on April 9 and 10. (RR6-7). In addition to introducing the complainant's and Reich's interviews, the complainant testified that, at the time, she thought of Reich more as a friend than a teacher. (RR6: 239). They spent a great deal of time together at school, often alone, and Reich routinely hugged her, picked her up, had her sit on his lap, and otherwise physically conveyed his affection. (RR6: 239, 241-45). The complainant

9

further alleged, however, that he ordered her to keep their relationship a secret, and threatened that, should she not comply, he would hurt her, her parents, and her dog. (RR6: 257).

The evidence additionally showed that, when the complainant was in third grade, Reich had sent her an email asking, "who is the greatest teacher in the world," to which she reacted with considerable distress. (RR6: 48-50). This surprised her parents, so they set a meeting with Reich and the school's principal at which Reich apologized, but forthrightly explained that he and the complainant had formed a special bond and were often alone together. (RR6: 50, 54, 55, 58, 61). Given a second chance, though, and instructed to never be alone with the complainant again, Reich failed to comply. (RR6: 63, 69-70). Nonetheless, the school district's "Security Police Specialist" ultimately concluded that Reich's conduct was neither criminal nor even violated district policy. (RR7: 51-53). It was this conclusion that prompted the complainant's parents to remove her from Reich's school. (RR6: 81).

Upon resting, the State abandoned counts three and four. (RR7: 106). The defense then rested as well. (RR7: 112). Officer Burke accurately summarized the case: "It just basically boils down to the only two

10

people that knew what has occurred [are the complainant and Reich]."
(RR6: 153). The jury apparently believed the complainant's version, as
the following day, after hearing arguments, the jury found Reich guilty
on the two remaining counts. (RR8: 71); (CR: 246, 249). After consider-
ing the State's and defense's punishment evidence, the jury reached a
verdict of six years' imprisonment on each count. (RR9: 237); (CR: 246,
249). The court then sentenced Reich to serve the sentences consecu-
tively. (RR9: 242-43); (CR: 246, 249).

Reich timely filed notice of appeal and a motion for a new trial,
the latter of which was overruled by operation of law. (CR: 254, 262); *see*
TEX. R. APP. P. 21.8(c). On appeal to the Fifth Court of Appeals, Reich
set forth seven grounds of error. In an opinion released July 24, 2015,
the court overruled each and affirmed Reich's convictions. *Reich v.
State*, No. 05-14-00562-CR, 2015 WL 4505937 (Tex. App.—Dallas 2015).
No motion for rehearing was filed.

## Ground for Review One

> The trial court erred in overruling Reich's objection to not being notified that the State sought to prove the child-sexual-abuse complainant was younger than 14 years of age

## I. The court of appeals's holding

In Reich's second ground on appeal, he argued that the trial court erred in overruling his objection to not being notified that the State sought to prove the complainant was younger than 14 years of age, making him ineligible for probation. (Ap. Br. at 28-35). It was long ago held that "[e]very circumstance constituting a statutory offense which would affect the degree of punishment, must be alleged in the indictment." *Long v. State*, 13 Tex. 6, 10 (1871). And, to that end, this Court has consistently held, in no uncertain terms, that because the affirmative finding of a deadly weapon delays a defendant's eligibility for parole, and because of the fundamental nature of one's liberty interest in parole, a defendant is entitled to notice by written pleading if the State intends to seek a deadly weapon finding at trial. (Ap. Br. at 32) (citing *Ex parte Patterson*, 740 S.W.2d 766, 773–75 (Tex. Crim. App. 1987), overruled on other grounds by *Ex parte Beck*, 769 S.W.2d 525 (Tex. Crim. App. 1989) (citing *Moore v. State*, 154 Tex. Cr. R. 307, 227 S.W.2d

12

219 (1950)). As, obviously, a defendant has a similar liberty interest in never being sent to prison in the first place, Reich argued that the circumstance at issue here was analogous to a deadly weapon enhancement. (Ap. Br. at 32-33). This is an important question of state and federal law that has not been, but should be, settled by this Court. *See* TEX. R. APP. P. 66.3(c).

The court of appeals did "not reach the issue of whether the State is required to notify a defendant in writing when the victim is under the age of 14 because, in this case, the record shows Reich had actual notice of A.D.'s age":

> Even if written notice was required—an issue we do not address—it is uncontested Reich had actual knowledge prior to trial that A.D. was under the age of fourteen and the impact of her age on his potential punishment. Several days before trial began, Reich filed a "Motion to Declare the Punishment of T.P.C. Offense 21.11(a)(1)—Indecency By Contact—Unconstitutional," in which he stated: "Defendant is charged with Indecency with a Child (under 14 via contact) per 21.11(a)(1)." In the motion, Reich acknowledged he "is statutorily prevented from being eligible to receive probation if a jury (or judge) were to find Defendant guilty of the underlying charge" because of section 4(d)(5) of the code of criminal procedure. Reich's motion shows he was on notice of A.D.'s age and the impact on his potential punishment before trial.

*Reich v. State*, No. 05-14-00562-CR, 2015 WL 4505937, *3 (Tex. App.–Dallas 2015). In so doing, however, the court of appeals did not dispute

that the State never actually notified Reich of anything—rather defense counsel simply filed a motion that anticipated that the State would give the necessary notice and make this argument.

## II. If "actual notice" had been provided, it would have satisfied the State's obligation to provide written notice

Ordinarily, a defendant is entitled to written notice in some form that the use of a deadly weapon will be a fact issue at trial. *Ex parte Minott*, 972 S.W.2d 760, 761 (Tex. Crim. App. 1998). Accordingly, in *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995), this Court noted that "the mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an 'intent to introduce' such evidence in its case in chief."[1] This Court modified this rule somewhat in *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001), holding that, under some circumstances, when delivered shortly after a defendant's request, witness statements that describe uncharged misconduct can constitute reasonable notice. *Id.* In that case, sometime after the defendant requested notice of uncharged miscon-

---

[1] Although *Buchanan* interpreted Rule of Evidence 404(b), its holding is also applicable to the article 37.07, section 3(g) notice requirement. *See Roman v. State*, 986 S.W.2d 64, 66 (Tex. App.—Austin 1999, pet. ref'd); *Dodgen v. State*, 924 S.W.2d 216, 219 (Tex.App.—Eastland 1996, pet. ref'd).

14

duct, the State provided a witness list and witness statements. *Id.* at 270. When the State offered evidence of the uncharged misconduct during the trial, the defendant did not dispute the State's claim that he had actual notice of the uncharged misconduct through the witness statements. *Id.* This Court held that, in light of those circumstances, the State satisfied the notice requirement. *Id.* at 272. Along those lines, this Court has also held that, when a defendant pleads guilty as part of a plea agreement, and the inclusion of an affirmative finding of a deadly weapon is a part of that agreement, the defendant has received actual notice of the State's intention to seek an affirmative finding that a deadly weapon was used and has waived the right to written notice. *Minott*, 972 S.W.2d. at 762; *see also Brooks v. State*, 847 S.W.2d 247, 249 (Tex. Crim. App. 1993); *Mitchell v. State*, 137 S.W.3d 842, 847 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

### III. In order to provide "actual notice" the State has to provide *something*, though, and in Reich's case it did not

Nonetheless, it remains that merely providing an "open file" does not provide reasonable notice of intent to introduce evidence. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (stating *Hayden* merely "modified [*Buchanan*] somewhat" and citing to it in

15

support of the holding). Similarly, providing a defendant with a child's written statement referencing extraneous offenses does not properly notify the defendant that the State intends to use those extraneous offenses against him at trial. *Fernandez v. State*, No. 04-96-00374-CR, 1997 WL 164204, *2 (Tex. App.—San Antonio 1997, no pet.). This is because "[t]he mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an 'intent to introduce' such evidence in its case in chief." *Buchanan*, 911 S.W.2d at 15. This focus on the State's "intent to introduce" makes certain the defendant is apprised not only of what the State knows, but also what it intends to introduce at trial. "[A]ctual notice of the State's ability to introduce extraneous offenses is not the equivalent of notice of what the State intends to introduce." *Nash v. State*, No. 01-97-01183-CR, 1999 WL 649164, *2 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Just as the State's knowledge that a defendant suffered mental health issues would not absolve the defendant from providing notice of his intention to offer evidence of an insanity defense, neither does a defendant's knowledge of the State's evidence provide actual notice of the State's intent to introduce it. *See* TEX. CRIM. PROC. CODE § art. 46C.051.

In Reich's case, however, the court of appeals affirmed his conviction for precisely that reason: simply because "Reich's motion [to Declare the Punishment... Unconstitutional] shows he was on notice of A.D.'s age and the impact on his potential punishment before trial." *Reich*, 2015 WL 4505937 at *3. The court pointed to nothing that the State actually provided informing Reich of as much. This is directly in conflict with this Court's holding in *Buchanan. See also Dodgen v. State*, 924 S.W.2d 216, 219 (Tex. App.-Eastland 1996, pet. ref'd) (the State's notice is not sufficient to allow evidence of all extraneous offenses when its response only gives notice of its intent to introduce proof of one offense, even when a complete record of defendant's criminal history is attached). The State has to provide *something. Cf. Roman v. State*, 986 S.W.2d 64, 66–68 (Tex. App.-Austin 1999, pet. ref'd) (very general written notice of the State's intent to introduce extraneous offenses, together with the police offense report attached to and incorporated by reference in the State's notice is sufficient); *Woodard v. State*, 931 S.W.2d 747, 749 (Tex. App.-Waco 1996, no pet.) (State gives sufficient notice when it gives the defendant copies of his pen packets and criminal his-

tory and tells him that everything in the documents was subject to introduction).

This Court has already allowed the State wide latitude in providing "actual notice," rather than the written notice required by law. It should not further approve as "actual notice" the State providing nothing at all. Accordingly, Reich respectfully requests this Court to grant this petition so that it may reverse the court of appeals's holding and make clear that the State does not provide "actual notice" when it provides nothing at all. This Court should then remand this case to that court to consider whether the State is in fact required to notify a defendant in writing when the victim is under the age of 14.

## IV. The State is required to notify a defendant in writing if the child-sexual-abuse victim is under the age of 14

Should this Court wish to consider that subsequent question in the first instance, however, Reich again urges that the State was in fact required to notify him that it would seek to prove the complainant was younger than 14 years old. Before the court of appeals, the State argued "the age of the victim is not an enhancement that requires notice" because it is not the State's burden to prove as much—it is the defendant's "burden of proving he is eligible for community supervision." (St. Br. at

18

13-14) (citing *Leday v. State*, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998); *Baker v. State*, 519 S.W.2d 437 (Tex. Crim. App. 1975)). And, to be sure, this Court has long held that "[t]he defendant has the burden to prove eligibility for probation if the case is tried to a jury." *Leday*, 983 S.W.2d at 724 (citing *Walker v. State*, 108 Tex. Crim. 190, 193, 299 S.W. 417, 418 (1927) ("We must not lose sight of the fact that the burden of showing himself entitled to a suspended sentence rests upon the accused; that is, that he must satisfy the jury that he has not been convicted of a felony in this or any other state prior to the instant trial.")). But, as the State acknowledged on appeal, the victim-age provisions were relatively recently added to the probation-eligibility statute, which before concerned only prior convictions. (St. Br. at 14). And, as the State further acknowledged, no court has yet determined whether the burden on a defendant to prove he has no final felony convictions extends to the context at issue in this case. (St. Br. at 14).

As to that question of first impression, the State contended the victim-age provisions are "similar to [the] prior felony conviction" provision and that the traditional rule should thus apply. (St. Br. at 13). But the State failed to point to any similarity at all. Instead, the State iden-

19

tified a distinction between the victim-age and deadly-weapon provisions, the latter of which "only renders a person ineligible 'when it is shown' that a deadly weapon was used," while the former of which "simply states that a defendant 'is not eligible for community supervision under this section if… the victim of the offense was younger than 14 years of age at the time the offense was committed.'" (St. Br. at 14) (citing TEX. CRIM. PROC. CODE art. 42.12 §§ 3g(2) & 4(d)(5)). Thus, the State concluded the victim-age provisions "[are] a simple statement of eligibility not requiring any showing of proof [by the State]." (St. Br. at 14). And from this, the State then concluded that, absent a required showing of proof, the burden must be on the defendant. (St. Br. at 14-15).

The victim-age provisions are not silent as to the burden of proof, though. The statute states "[a] defendant is *not* eligible for community supervision under this section if," among other things, "the defendant is convicted of [a sexual offense and] the victim of the offense was younger than 14 years of age at the time the offense was committed." TEX. CRIM. PROC. CODE art. 42.12 §§ 4(d)(5) & (6) (emphasis added). This language implies that the "default" is that the defendant is eligible for community

20

supervision, but if it shown the victim was younger than 14 the defendant is not. The burden would of course, then, be on the State to prove the victim's age. If the statute said "a defendant *is* eligible for community supervision under this section if the victim was 14 years of age or older," by contrast, that language would suggest the burden was on the defendant to show he was eligible. And, sure enough, those "other things" a "defendant is *not* eligible for community supervision under this section if" are all things the State in fact must prove, or which the jury determines: the crime committed, the sentence. *See* TEX. CRIM. PROC. CODE art. 42.12 §§ 4(d)(1), (2), (7), (8) (emphasis added).

Even if the victim-age provisions are silent as to the burden of proof, though, that distinction does not at all show, as the State urged, that those provisions should be treated the same as the prior-felony-conviction provision. *See* TEX. CRIM. PROC. CODE art. 42.12 §4(e) (requiring "*the defendant* [to] file[ ] a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state."). As to this question of first impression, Reich urges the Court that it makes entirely more sense to conclude that the burden is on the State.

First, where the plain text of a statute is silent on the allocation of the burden of persuasion, "the ordinary default rule" is that the plaintiff bears the burden. *See, e.g., Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (citing 2 J. Strong, McCormick on Evidence § 337, p. 412 (5th Ed. 1999) ("The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion"); C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003) ("Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims")). And in criminal cases, of course, the State is the plaintiff. *See Marquez v. State*, 921 S.W.2d 217, 222 (Tex. Crim. App. 1996) ("We have generally held, even for constitutional claims, that the party seeking to change the status quo bears the burden of showing facts entitling him to relief.").

More important, though, is that the default rule is fair and makes sense in this circumstance because evidence of the complainant's age would be primarily within the knowledge of the State. *Cf.* 1 Wharton's

Criminal Evidence § 2:9 (15th ed.) (explaining that, as to affirmative defenses, it is "fair and makes sense" for the burden to be on the defendant because "the facts in support of such a defense would be peculiarly within the knowledge of the accused") (citing *Morrison v. California*, 291 U.S. 82, 88-89 (1934); ALI, Model Penal Code, § 1.12(3)(c) (Proposed Official Draft 1962)). "The burden should logically be assigned to the party who is best positioned to carry that burden." *Marquez*, 921 S.W.2d at 226 (Baird, J., dissenting).

To that end, the complainant's age, like whether a deadly weapon was used, relates to the charged offense, not the defendant's criminal history. And in sexual assault cases, the complainant is typically the State's chief witness. *See, e.g., Hammer v. State*, 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009) ("Sexual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence."). Evidence of the complainant's date of birth, then, is primarily within the State's hands. Indeed, to force a defendant to prove the complainant's age could permit that burden to become an impossible one were the complainant

23

not to testify. And the legislature simply could not have intended as much. *See Ex parte Lawson*, 966 S.W.2d 532, 535 (Tex. App.—San Antonio 1996) (rejecting an interpretation of statute that places an impossible burden on the defendant); *Ferguson v. State*, 2 S.W.3d 718, 723 (Tex. App.—Austin 1999, no pet.) ("Appellant, in showing that some actual harm resulted from the erroneous jury charge, should not have the impossible burden of showing that, but for the erroneous jury charge, she would have been acquitted."); *Ex parte Kovacs*, 416 S.W.2d 420, 421-22 (Tex. Crim. App. 1967) ("To hold in a case of this nature that the probation officer must allege the exact date when probationer violated the terms of his probation by leaving the State without consent would be placing an impossible burden on the State."); *State v. Mechler*, 153 S.W.3d 435, 447 (Tex. Crim. App. 2005) (Cochran, J., concurring) (collecting cases and noting that, in interpreting statutes, courts have rejected readings that would place an impossible burden on the State); *Weatherby v. State*, 61 S.W.3d 733, 741 (Tex. App.—Fort Worth 2001) (Dauphinot, J., concurring) ("The law cannot impose an impossible burden."). By contrast, "[t]he usual manner of proof" to show no prior felony convictions is for the defendant to simply testify at the penalty phase

that he or she has never before been convicted of a felony in Texas or any other state. 43A George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 47:16 (3d ed. 2011) (citing *Watson v. State*, 717 S.W.2d 765 (Tex. App.—San Antonio 1986, no pet.)) (testimony by defendant that he had never been charged with a felony before sufficient proof of no conviction)). Even if this Court were forced to read a burden into the victim-age provisions, then, it makes entirely more sense to read them as placing the burden on the State.

Accordingly, regardless of this Court's reading of the statute—whether, as Reich urges, it plainly puts the burden on the State, or, as the State urged, it is silent to the burden—this Court should hold that the State must prove the victim's age if it wishes to preclude a defendant from probation. And because it is the State's burden, it also must give notice.

The State did not challenge this last step in its brief on appeal. And nor could it. But were this Court to wonder if it might hold that the burden was the State's but that notice was not required, Reich again urges this Court that because of the fundamental nature of his liberty interest in receiving probation, where, as here, the burden is on the

25

State to prove ineligibility for as much, a defendant is entitled to notice that the State will attempt to do so. (Ap. Br. at 32-33) (citing *Patterson*, 740 S.W.2d at 773–75 ("We dare not deny a constitutional guarantee against deprivation of liberty which would be routinely granted against deprivation of property when proper notice has not been given."); *see also Rogers v. State*, 640 S.W.2d 248, 251 (Tex. Crim. App. 1981) ("We begin by recognizing that the liberty of a probationer is protected by the due process and due course of law provisions of the constitutions.") (citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *Wester v. State*, 542 S.W.2d 403 (Tex. Crim. App. 1976)).

Thus, for all these reasons, Reich urges this Court that, were it to consider without remand whether the State is required to notify a defendant in writing when the victim is under the age of 14, because the burden is on the State to prove the complainant was younger than 14, and that, accordingly, the State was required, but failed, to give notice, the trial court erred in denying Reich's objection to the State's failure. Moreover, because the failure to provide notice is "constitutional error," and this Court therefore must vacate Reich's sentence and reverse the case for a new punishment hearing unless it determines beyond a rea-

26

sonable doubt that the error did not contribute to punishment, Reich urges this Court that the trial court's error was not harmless beyond a reasonable doubt. *Patterson*, 138 S.W.3d at 647 (citing *Ex parte Minott*, 972 S.W.2d 760, 762 (Tex. Crim. App. 1998)). Even if a no-notice finding does nothing more than affect an appellant's parole eligibility, this Court must vacate the finding, as it impacts the "character" of the appellant's punishment. *Id.*; *Tellez*, 170 S.W.3d at 163-64. And in Reich's case, the trial court's error potentially transformed his sentence from probation to imprisonment. Certainly, this Court cannot be sure of as much beyond a reasonable doubt.

## V. Conclusion

Reich respectfully requests this Court to grant this petition so that it may reverse the court of appeals's holding and make clear that the State does not provide "actual notice" when it provides nothing at all.

## Ground for Review Two

> The court of appeals misapplied this Court's caselaw on sufficiency of the evidence in finding the evidence sufficient to uphold Reich's conviction for indecency with a child for touching the complainant's breast

## I. The court of appeals's holding

In Reich's first ground on appeal, he argued the evidence was legally insufficient to support his conviction for touching the complainant's breast with the intent to arouse and gratify the sexual desire of any person. Reich denied that he touched her breast intentionally, and with the intent to arouse and gratify sexual desire. But the complainant's testimony, as well—if it could even be construed to imply that Reich intentionally touched her breasts—in no way supports an inference that he did so in any sort of sexualized manner. (Ap. Br. at 25). Rather, she testified that "[s]ometimes," following a hug, "he would kind of just place his hands [on her "chest area"] and push [her] away." (Ap. Br. at 25). Thus the evidence showed that any touching of the complainant's breast was incidental; accordingly, the evidence was legally insufficient to support the jury's guilty verdict. (Ap. Br. at 26).

The court of appeals rejected Reich's argument, however, conclud-

ing that "a reasonable jury could infer the requisite intent by Reich." *Reich*, 2015 WL 4505937 at *2. Specifically, the court pointed to the evidence that:

> Reich liked to spend a lot of time alone with A.D., and he kept her after class to talk to her. Reich had A.D. sit on his lap, he touched her bottom, he put his hands on her back and under her shirt, he put her hands on his penis, and he told her not to tell anyone about their interactions. He also "would touch [her] chest area" and would "kind of place his hands" on her chest area. Lanier testified Reich was seeking affection from the children he taught and Reich told Lanier he intentionally touched A.D. on her breasts.

*Id.*

In rejecting Reich's argument, the court of appeals misapplied this Court's caselaw on sufficiency of the evidence. *See* TEX. R. APP. P. 66.3(c). Specifically, the court of appeals applied a standard of review that is considerably less demanding than this Court has set out in cases such as *Winfrey v. State*, 393 S.W.3d 763, 769 (Tex. Crim. App. 2013).

## II. There is no evidence Reich intentionally touched the complainant's breast with the intent to arouse or gratify sexual desire

There is no question that Reich touched her breast. The issues at trial were whether he did so intentionally, and, if so, with the intent to arouse and gratify sexual desire.

29

Contrary to the court of appeals's holding, the complainant's testimony—if it could even be construed to imply that Reich intentionally touched her breasts—in no way supports an inference that he did so in any sort of sexualized manner. On direct examination, she testified that "[s]ometimes," following a hug, "he would kind of just place his hands [on her "chest area"] and push [her] away." (RR6: 252). Then, on cross-examination, the complainant confirmed that she had earlier testified that Reich touched her breasts. (RR6: 278). And finally, on re-direct examination, she again affirmed that he touched her "chest area." (RR6: 311). That's it.

In sum, then, the evidence indicated any touching of the complainant's breast was incidental; even viewing the evidence in the light most favorable to the verdict, Reich touched the complainant's breasts only in an effort to push her off of him. (RR6: 252). And, in light of the complainant's age at the time, such an action cannot inherently be inferred as sexual, as opposed to an older, post-pubescent girl. Indeed, the complainant's testimony is directly in line with the conclusion reached by Plano ISD's investigation: "that [Reich] did have inappropriate con-

tact with" the complainant, but that contact "was not malicious, nor did it meet the elements of a criminal offense." (RR7: 53).

There is, in fact, no evidence Reich touched the complainant's breast intentionally with the intent to arouse and gratify sexual desire. A "strong suspicion of guilt does not equate with legally sufficient evidence of guilt." *Winfrey*, 393 S.W.3d at 769. This is not a case where the jurors chose between competing rational inferences–the State's evidence simply does not rise above suspicion. *See, e.g., id.; Ivey v. State*, 07-08-0079-CR, 2008 WL 4916098 (Tex. App.—Amarillo 2008, no pet.) (reversing conviction based on insufficient evidence because conclusion reached by speculation); *Greer v. State*, 437 S.W.2d 558 (Tex. Crim. App. 1969) (intent must be proven beyond a reasonable doubt by facts and circumstances which lead with reasonable certainty to conclusions sought and not left to speculation or surmise); *Hall v. State*, 86 S.W.3d 235 (Tex. App.—Austin 2002, pet. ref'd) (requiring more than mere conjecture or speculation); *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("A conclusion reached by speculation ... is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.").

## III.  Conclusion

31

The evidence here was insufficient to prove that Reich touched the complainant's breasts with the intent to arouse or gratify sexual desire. The court of appeals has misapplied the caselaw in deciding otherwise.

## Prayer for Relief

Based on the foregoing, Reich prays that the Court grant this petition for discretionary review.

Respectfully submitted,

/s/ Gary A. Udashen
Gary A. Udashen
State Bar No. 20369590
gau@sualaw.com

/s/ Brett Ordiway
BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was electronically served to the Collin County District Attorney's Office and State Prosecuting Attorney on August 19, 2015.

/s/ Gary A. Udashen
Gary A. Udashen

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this petition contains 4,460 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

/s/ Gary A. Udashen
Gary A. Udashen

# **<u>Appendix</u>**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00562-CR

**TODD ALLEN REICH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-80306-2013**

## MEMORANDUM OPINION

Before Justices Brown, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Todd Reich of two counts of indecency with a child by contact. On appeal, Reich argues: (1) the evidence is insufficient to support his conviction for touching the complainant's breasts; (2) the trial court erred by overruling his objection to the State's failure to notify him the State would seek to prove the complainant was younger than fourteen years old; (3) the trial court erred by overruling his objection to the prosecutor's closing arguments about burden of proof; (4) the State delayed disclosing evidence; (5) the trial court erred by admitting testimony from an undisclosed witness; and (6) the trial court erred by overruling his objection to the prosecutor referring to the complainant as the "victim." We affirm the trial court's judgment.

FACTUAL BACKGROUND

The complainant, A.D., attended Hunt Elementary School where Reich was her physical education teacher. A.D. testified when she was in kindergarten, her relationship with Reich was like a friendship and they spent a lot of time alone together. Reich also was her teacher when she was in first, second, and third grades. Reich would keep A.D. after class to talk to him. He also would have her sit on his lap, he would scratch her back underneath her shirt, and sometimes he would touch her bottom. When A.D. would sit on his lap, Reich would make her touch him "down near the private parts." One day when A.D. was in second grade, she was not participating in physical education class because she had a broken arm. Reich called A.D. to him and had A.D. sit on his lap. A.D. testified while she was sitting on his lap, Reich made her touch "[h]is lower private part" that he uses for "[g]oing to the bathroom."

Reich also would hug A.D. very hard as though he were going to pick her up. Sometimes when he would hug her, A.D. testified, "it felt like he would touch my chest area . . . When he stopped hugging me, he would kind of just place his hands there and push me away." Reich told A.D. she should not tell anyone and, if she did, he would hurt her, her parents, and her dog.

Billy Lanier, an investigator with the Collin County Sheriff's Office, testified he interviewed Reich. Reich told Lanier that A.D. was the sexual aggressor and at the time he interacted with A.D. "he was at a point in his life that he was depressed, lonely and was seeking out affection. . . . he was at a point in his life that he was alone, he did not have a girlfriend, that he developed a relationship with these children and that he was looking for affection and these- - children were the ones that were supplying that to him." When asked whether Reich said he accidentally or purposefully touched A.D.'s breasts, Lanier answered "[i]nitially accidental, then purposeful at the end" of the interview. Lanier testified: "he said that yes, it was intentional that

[sic] when he did touch her on the breast." Lanier further testified it is extremely common for people who commit sex offenses to portray the touching as accidental or playful.

LAW & ANALYSIS

**A.      Sufficiency of the Evidence**

In his first issue, Reich argues the evidence is insufficient to show he intentionally touched A.D.'s breasts with the intention to arouse and gratify sexual desire. Reich concedes he touched A.D.'s breasts. His argument is the evidence is insufficient to show "he did so intentionally, and, if so, with the intent to arouse and gratify sexual desire."

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

–3–

The evidence shows Reich liked to spend a lot of time alone with A.D., and he kept her after class to talk to her. Reich had A.D. sit on his lap, he touched her bottom, he put his hands on her back and under her shirt, he put her hands on his penis, and he told her not to tell anyone about their interactions. He also "would touch [her] chest area" and would "kind of place his hands" on her chest area. Lanier testified Reich was seeking affection from the children he taught and Reich told Lanier he intentionally touched A.D. on her breasts. From this evidence, a reasonable jury could infer the requisite intent by Reich. *See id.*; *see also Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

Although Reich argues on appeal that in the video of his police interrogation, he admitted he "may have brushed against [her] breasts accidentally, in the course of picking her up, but he never intentionally touched her breasts," the jury was responsible for resolving any conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *See Clayton*, 235 S.W.3d at 778. In contrast to Reich's testimony, Lanier testified it is extremely common for people who commit sex offenses to portray the touching as accidental or playful. The jury also heard A.D.'s testimony. We must assume the jury weighed Reich's credibility, as well as the other evidence, to reach its conclusion, and we defer to the jury's credibility determination. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).

Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Reich intentionally touched A.D.'s breasts with the intention to arouse and gratify sexual desire. *See Clayton*, 235 S.W.3d at 778. We overrule Reich's first issue.

**B.      Notice of A.D.'s Age**

In his second issue, Reich argues the trial court erred by overruling his objection to the State's failure to notify him in writing that A.D. was younger than fourteen years of age. (Because A.D. was younger than fourteen at the time of the offense, Reich was ineligible for community supervision.  *See* TEX. CODE CRIM. PROC. ANN. art., 42.12, § 4(d)(5) (West Supp. 2014)).  Tracking the statute, the indictment charged Reich with indecency with a child younger than seventeen years of age.

Section 4(d)(5) of article 42.12 of the code of criminal procedure states: "A defendant is not eligible for community supervision under this section if the defendant is convicted of an offense listed in Section 3g(a)(1)(C), (E), or (H), if the victim of the offense was younger than fourteen years of age at the time the offense was committed."  *Id*.  Reich was convicted of an offense listed in section 3g(a)(1)(C), indecency with a child.  Nothing in section 4(d)(5) requires the State to provide written notice that the victim is under the age of fourteen to the defendant. *Id*.

We do not reach the issue of whether the State is required to notify a defendant in writing when the victim is under the age of fourteen because, in this case, the record shows Reich had actual notice of A.D.'s age.  Even if written notice was required—an issue we do not address—it is uncontested Reich had actual knowledge prior to trial that A.D. was under the age of fourteen and the impact of her age on his potential punishment.  Several days before trial began, Reich filed a "Motion to Declare the Punishment of T.P.C. Offense 21.11(a)(1)–Indecency By Contact– Unconstitutional," in which he stated: "Defendant is charged with Indecency with a Child (under 14 via contact) per 21.11(a)(1)."  In the motion, Reich acknowledged he "is statutorily prevented from being eligible to receive probation if a jury (or judge) were to find Defendant guilty of the

underlying charge" because of section 4(d)(5) of the code of criminal procedure. Reich's motion shows he was on notice of A.D.'s age and the impact on his potential punishment before trial.

We overrule Reich's second issue.

**C.     State's Closing Arguments**

In his third and fourth issues, Reich argues the trial court erred by overruling his objections to the prosecutor's closing arguments, which, he asserts, misstated and shifted the State's burden of proof.

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper jury arguments generally fall within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). When examining challenges to jury argument, we consider the remark in the context in which it appears. *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000) (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)).

At trial, Reich raised objections to the State's final closing argument:

[Prosecutor]: You would agree with me that a child who would say something about this to this seriousness, that would say something like this that wasn't true, that would be an evil child. This is a person in her forensic interview that says she likes going to Catholic school because she likes going to Mass. This is a person who described how she never told her friend I was sexually assaulted. I never used those words she said, but maybe it is a good thing that my friend used those words. Maybe God sent my friend. That's what she said. You know she is not an evil child.

[Defense counsel]: Again, Judge, I am going to object. It is lowering the burden and that's improper.

THE COURT: Ladies and gentlemen, you will receive the burden of proof in the Charge of the Court.

[Defense counsel]: With all due respect, Your Honor, can I get a ruling?

THE COURT:          Overruled.

Reich argues the trial court erred by overruling his objections to the prosecutor's statement that the jury's verdict would reflect whether A.D. was "an evil child that would make up such horrible accusations." From the context of this record, the trial court could have concluded the prosecutor was responding to arguments from Reich's counsel attacking A.D.'s credibility. In his closing, Reich's counsel argued:

> [Defense counsel]:     Now, what's this table over here [prosecutor's table] going to do? They are going to ride in here on two horses. Horse number one, Todd is a monster. Horse number two, believe [A.D.] one hundred percent.
> . . . .
> [Defense counsel]:     Horse number two. Let's be clear about something. In order for you to convict, you are going to have to believe [A.D.] one hundred percent, so let's talk about [A.D.].
> . . . .
> [Defense counsel]:     What goes on in the mind of a nine-year-old? Who knows? . . . I don't know. I will never know.

Only after Reich's counsel argued the jury would need to believe A.D. "one hundred percent" and questioned "what goes on in the mind of a nine-year-old" did the prosecutor postulate that only an "evil child" would fabricate the accusations made by A.D. Because the trial court could have concluded the prosecutor's statement fell within the area of answering opposing counsel's arguments, we conclude the trial court did not abuse its discretion by overruling Reich's counsel's objections.

Reich also complains the court erred by overruling his objection to the prosecutor's statement about Reich's subpoena power. In apparent anticipation of the prosecutor's final closing argument, Reich's counsel argued:

> And I want to digress, momentarily. This prosecutor gets up here and starts talking about equal subpoena power. The burden is on her. Just because I am aggressive, just because I go out and do my job and I get exhibits doesn't mean I have anything to proactively do. I don't play checkers. I do my job. And you

–7–

may not like me, and I understand that. And that just goes with the territory. But don't you let this good prosecutor get up here and turn the tables because the burden always stays with her.

The State responded in its final closing argument:

[Prosecutor]: And I do mention that the Defense has equal subpoena power. They had every statement. They had the opportunity to talk to every witness, and you can't just throw things out. And even though it is my burden of proof, if there was something that somebody else had to say, they had every opportunity to bring that person.

[Defense counsel]: I would object to that. That's shifting the burden also.

THE COURT: Overruled.

The record shows that Reich's counsel first raised the equal subpoena power issue before the prosecutor ever mentioned it in front of the jury. The trial court could have concluded the prosecutor's reference to equal subpoena was responsive to defense counsel's remark. Additionally, a prosecutor may comment on a defendant's failure to produce witnesses and evidence so long as the comment does not fault the defendant for exercising his right not to testify. *See Jackson*, 17 S.W.3d at 674; *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (if language can reasonably be construed to refer to appellant's failure to produce evidence other than own testimony, comment is not improper). Because the prosecutor's comment was properly directed toward Reich's ability to subpoena witnesses and not toward Reich's failure to testify, we conclude the trial court did not abuse its discretion by overruling Reich's objections.

Even if the trial court erred by overruling the objections, the trial court cured any harm or prejudice that might have occurred. The jury charge included instructions about the burden of proof, and Reich does not complain about these instructions on appeal. We presume the jury followed the court's instructions absent evidence to the contrary, which Reich has not provided. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Wesbrook v. State*, 29 S.W.2d 103, 116 (Tex. Crim. App. 2000). By advising the jury on the proper burden of proof, we

conclude the trial court cured any harm or prejudice that might have occurred. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (holding court generally presumes jury will follow judge's instructions).

We overrule Reich's third and fourth issues.

**D.** ***Brady* Material**

In his fifth issue, Reich argues the State improperly delayed disclosing four pieces of evidence in violation of his rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and he was prejudiced because he would have conducted voir dire and used his peremptory strikes differently if he had known about the evidence earlier.[1]

To establish a claim under *Brady*, a defendant must demonstrate "(1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; [and] (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different." *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)). However, "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011); *see also Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). The State's duty to produce *Brady* material attaches when the information comes into the State's possession. *Harm*, 183 S.W.3d at 407.

Reich complains about four pieces of evidence:

---

[1] In his brief, Reich also argues his counsel would have conducted opening argument differently if he had known about the evidence. However, Reich's counsel had the evidence prior to opening arguments.

Court's Exhibit 1: A letter from a civil attorney representing A.D.'s family to the Plano Independent School District advising the district that civil litigation was a "virtual certainty."

Court's Exhibit 2: Notice that A.D.'s mother changed a prior statement she made about the school district's investigation of A.D.'s allegations. She originally stated "we do feel it was investigated properly." She revised her statement to: "we do not feel it was investigated properly."

Court's Exhibit 3: A hand-written journal entry from A.D.

Court's Exhibit 4: A.D.'s mother's voluntary statement to police.

Before making their opening statements, the parties made arguments to the trial court about whether the State properly disclosed the evidence, and the trial court overruled Reich's *Brady* objections.

The prosecutor explained that on the Thursday or Friday before trial, she received a telephone call from a civil attorney representing the Hunt Elementary School principal. The attorney informed the prosecutor he had been hired because Plano ISD believed it might be sued based on a letter sent by an attorney representing A.D.'s family. The prosecutor asked the lawyer to send the letter to him, which he did not do immediately. However, when she did receive it, the prosecutor sent the letter to Reich's counsel. Reich does not dispute the prosecutor's explanation about how and when she came into possession of Court's Exhibit 1.

As to Court's Exhibit 2, the prosecutor explained that when she met with A.D.'s mother as part of her trial preparation, A.D.'s mother informed the prosecutor that she omitted the word "not" from the sentence about whether the school properly investigated the allegations. The prosecutor told the trial court: "So I sent an email to the Defense saying she left out the word 'not.'" In response to the email, Reich's counsel also asked for a copy of the mother's witness statement, Court's Exhibit 4, which the prosecutor provided, even though she previously produced the witness statement to defense counsel several months earlier. The prosecutor

provided the trial court with her original email sending Court's Exhibit 4 to Reich's counsel; the email was dated several months prior to trial.

Finally, during the same meeting with A.D.'s mother, A.D.'s mother provided the prosecutor with two pages from A.D.'s journal (Court's Exhibit 3). The prosecutor told the trial court: "I did not know that existed when they came in for witness prep." The prosecutor then provided a copy to Reich's counsel.

There is no indication in this record that the State delayed providing any evidence to Reich. Rather, the record shows the State produced all four exhibits promptly. The State had no obligation to produce the evidence before it knew the evidence existed. *See Pena*, 353 S.W.3d at 810; *Harm*, 183 S.W.3d at 407. Because the record does not support the conclusion the State withheld evidence, we conclude Reich has not shown the State violated his rights under *Brady*. We overrule Reich's fifth issue.

**E.      Witness List**

In his sixth issue, Reich argues the trial court erred by admitting Billy Lanier's testimony because his name was not included on the State's witness list. During voir dire, the State informed Reich that it failed to include Lanier on its witness list, and the State intended to call Lanier during trial. Lanier is the investigator who interviewed Reich for more than two hours about the allegations by A.D. The State also told the trial court that Lanier's name appeared in the offense report.

We review the trial court's decision to permit Lanier's testimony for an abuse of discretion. *See Wood v. State*, 18 S.W.3d 642, 650 (Tex. Crim. App. 2000). "If the trial judge allows a witness to testify who does not appear on the State's witness list, we consider whether the prosecutor's actions constitute 'bad faith' and whether the defendant could have reasonably anticipated the witness' testimony." *Id*. In his brief, Reich concedes there is no evidence of bad

–11–

faith by the prosecutor, but he argues his counsel could not have reasonably anticipated Lanier would be called as a witness. We disagree.

Given the nature of the interaction between Reich and Lanier, Reich's counsel reasonably could have anticipated Lanier would be called as a witness. Reich's counsel indicated at trial that he was not surprised by the State adding Lanier. The following exchange occurred with the trial court:

> THE COURT: Okay. [Defense counsel], [the prosecutor] says you are not going to be surprised that they would call the person who interviewed the alleged victim [sic] in this case, and I would tend to agree with you not being surprised.
>
> [Defense counsel]: I may not disagree with that completely. However, just because [co-counsel] and myself may be a little bit more advanced than a novice criminal defense lawyer, we shouldn't be punished that way.

In light of the role Lanier played in the investigation of A.D.'s allegations, including interviewing Reich for more than two hours, his name appearing in the offense report, and Reich's counsel's representation to the trial court that he was not surprised, we conclude the trial court did not abuse its discretion by permitting Lanier to testify. We overrule Reich's sixth issue.

## F.     Referring to A.D. as a "Victim"

Reich filed a motion in limine to prohibit the State from using the word "victim" in front of the jury because he denied any criminal sexual conduct occurred and the word "victim" implied the State met its burden to show the alleged crime was committed. The judge denied the motion, but granted Reich's request for a running objection. In his seventh issue, Reich argues the trial court erred by overruling his objection and allowing the State to refer to A.D. as the "victim." Even if we assume the trial court erred, we conclude Reich was not harmed.

Reich and the State agree that no Texas court has determined whether the State's use of the word "victim" is improper. However, when considering whether a defendant suffered

–12–

ineffective assistance of counsel when his lawyer failed to object to a prosecutor's use of the term victim, our sister court commented the word "victim" is "not so inflammatory or prejudicial as to necessarily cause harm to the defendant when used occasionally in a lengthy trial by the attorneys or witnesses." *Weatherly v. State*, 283 S.W.3d 481, 486 (Tex. App.—Beaumont 2009, pet. ref'd). The Corpus Christi court rejected a similar argument. *See Gonzalez v. State*, No. 13-13-00427-CR, 2014 WL 4049800, at *16 (Tex. App.—Corpus Christi Aug. 14, 2014, pet. ref'd) (citing *Weatherly*, 293 S.W.3d at 486; *Byler v. State*, No. 03–01–00012–CR, 2002 WL 347753, at *3 (Tex. App.—Austin Mar. 7, 2002, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that counsel was ineffective "by allowing the State to use the word 'victim'" and collecting cases where prosecution employed terms such as "this killer" and "butcher" to refer to defendant)). "[T]he word 'victim' is mild and non-prejudicial, and is commonly used at trial in a neutral manner to describe the events in question. . . . it is not error for the State, witnesses, or defense counsel to use the word 'victim' at trial." *Tollefson v. Stephens*, Nos. SA: 14-CV-144-DAE, SA: 14-CV-171-DAE, 2014 WL 7339119, at *17 (W.D. Tex. Dec. 23, 2014).

Under Rule 44.2(b), any error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when "the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). When conducting a harm analysis, we consider the whole record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and

whether the State emphasized the error. *Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014); *Rich*, 160 S.W.3d at 577.

After examining the entire record, we conclude the error was harmless. The State used the term "victim" to refer to A.D. in the jury's presence nine times during a two-day jury trial. Defense counsel also referred to A.D. as a "victim" in front of the jury.[2] Here the State's use of the word victim in this case was not so inflammatory or prejudicial as to affect Reich's substantial rights. We overrule Reich's seventh issue.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
140562F.U05

---

[2] Defense counsel had the following exchange with a witness:

Q. And that brings me to a great question. You mentioned the reason the victim in this case was taken to the Child Advocacy Center was why?
A. Why the victim was?
Q. Correct.
A. To be forensically interviewed.
Q. Why would you need a forensic interview of the potential victim?
A. So that it could be recorded.

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TODD ALLEN REICH, Appellant

No. 05-14-00562-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-80306-2013.
Opinion delivered by Justice Stoddart.
Justices Brown and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 24th day of July, 2015.